**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ELIZABETH JANKOWSKI,       )
        Plaintiff,         )
                       )
        v.             )       Civil Action No. 06-00618
                       )       Judge Nora Barry Fischer
WENDY DEMAND,[1] et. al.,     )
        Defendants.[2]    )

---

[1]

    The initially named defendants were Wendy Demand (who is deceased) (hereinafter "Demand"), John Doe, Jane Doe, Ramon C. Rustin (hereinafter "Rustin"), County of Allegheny Department of Corrections ("ACDC"), Allegheny County, Daniel Onorato (hereinafter "Onorato"), Allegheny County Pennsylvania Police ("ACPP"), Peter DeFazio (hereinafter "DeFazio"), Dana Phillips (hereinafter "Phillips"), Bruce Dixon (hereinafter "Dixon"), Allegheny County Health Department ("ACHD"), and Allegheny Correctional Health Services, Inc. ("ACHS") (collectively referred to as "Defendants").

    The following Defendants have been terminated from the case: Demand, Onorato, ACPP, and ACHD. (*See* Docket Nos. 10 and 15).

[2]

    The incident upon which Plaintiff's complaint is based occurred on May 8, 2004, although she did not file suit until two years later on May 8, 2006. Defendant Demand passed away and on September 12, 2006, Defendants filed a Suggestion of Death Notice (Docket No. 11). Counsel for Plaintiff then waited more than a year before moving to amend the caption. On October 3, 2007, counsel for Plaintiff asked leave of the Court to amend the caption, stating that Plaintiff had petitioned the Court of Common Pleas of Allegheny County to raise an estate on behalf of the deceased defendant, Demand. Even though the time for filing motions to amend was long past, the Court granted Plaintiff's Motion to Amend Caption by Order of the Court dated October 4, 2007. (Docket Nos. 38 and 39). Plaintiff's counsel was also given thirty days to secure the grant of Letters of Administration to substitute the estate. Despite the Court giving Plaintiff and her counsel generous leeway regarding compliance with the Court's order, counsel for Plaintiff once again failed to raise the estate for Defendant Demand in a timely manner. Plaintiff's counsel violated the Court's October 4, 2007 Order and waited until February 7, 2008 (a year and a half after the Suggestion of Death Notice was filed and after Defendants had filed a motion for summary judgment) before filing a motion to extend the time to create an estate for defendant Wendy Demand. (Docket No. 48). Defendants filed a response opposing Plaintiff's dilatory motion. (Docket No. 49). On February 14, 2008, the Court denied Plaintiff's Motion for Extension of Time in Which to Create an Estate for Defendant Demand because she failed to file a motion for substitution within 90 days. Fed.R.Civ.P. 25(a)(1). Thereafter, Plaintiff filed a Request of Plaintiff for Permission to Appeal (Docket No. 53), which Defendants opposed and the Court denied as procedurally defective on April 25, 2008. (Docket No. 55). Accordingly, the caption will remain as is, with the listing of "Defendant Wendy

1

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Elizabeth Jankowski (hereinafter, "Jankowski" or "Plaintiff") filed the instant civil

action against Defendants, alleging, among other things, excessive use of force and deliberate

indifference to Plaintiff's medical needs.  (Docket No. 1, at 7-13).  Currently pending before this

Court is a Motion for Summary Judgment [36], filed by the Allegheny County Defendants on

September 24, 2007, and another Motion for Summary Judgment [44], filed by the Allegheny Health

Defendants on November 2, 2007.[3]

At the outset, the Court notes Plaintiff's violation of Rule 56.1(c) of the Local Rules of this

Court ("LR 56(c)").[4]  Plaintiff did not respond to Defendants' statement of material facts and failed

---

Demand" and not the "Estate of Wendy Demand."
    It should also be noted that Defendant Demand has been referred to, at various parts of the record, as either "Wendy" or "Windy" Demand.  For the purposes of this discussion, the Court will utilize "Wendy" in any instance where Defendant Demand's first name is mentioned.

[3]

    For purposes of the instant Memorandum Opinion, the "Allegheny County Defendants" include ACPP, DeFazio, Demand, John Doe, Jane Doe, Rustin, and ACDC and the "Allegheny Health Defendants" include Phillips, Dixon and ACHS.

[4]

    Rule 56.1(c)(1) of the Local Rules of the United States District Court of the Western District of Pennsylvania mandates that the opposing response to the motion for the summary judgment include:

> A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:
> (a)    admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;
> (b)    setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record (*See* LR 56.1(b)(1) for instructions regarding format and annotation); and

to file a separate statement of material facts as required by LR 56(c)(1); instead, Plaintiff has included a brief facts section in the beginning of her Opposing Response Briefs (Docket Nos. 40 & 47). Thus, the facts, as set forth in Defendants' Statement of Material Facts Not in Dispute ("SMF") (Docket No. 36-3, Defendants' Exhibit 4), are deemed to be admitted by Plaintiff for the purpose of the instant motion, in accordance with LR 56.1(e). *See Ferace v. Hawley*, 2007 WL 2823477, at *1 (W.D. Pa 2007) (*citing Benko v. Portage Area School Dist.*, 2006 WL 1698317 (W.D. Pa 2006); *Smith v. Burrows Corp.*, 2005 WL 2106594 (W.D. Pa 2005); *Loving v. Borough of East McKeesport*, 2005 WL 3560661 (W.D. Pa 2005)) (defendants' facts were deemed to be admitted because the plaintiff failed to adhere to LR 56 and respond to defendants' statement of material facts). After careful consideration and for the reasons that follow, this Court will grant Defendants' respective motions for summary judgment.

## II.     **Factual Background**[5]

On or about May 8, 2004, the City of Pittsburgh Bureau of Police ("the Police") responded to a call on the Parkway East, Homestead Exit, where Plaintiff was found to be intoxicated and driving the wrong way on the parkway. SMF at ¶ 24. Plaintiff was arrested for driving under the influence and the Police took her to the Allegheny County Jail ("the Jail"). SMF at ¶ 5. Her blood alcohol content ("BAC"), at the time of the arrest, was 0.213%. *Id*. When she arrived at the Jail,

---

(c)      setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment[.]
LR 56(c)(1).

[5]
Given Plaintiff's failure to respond to Defendants' SMF, the facts asserted by Defendants are deemed admitted and are the facts relied upon by this Court in making its rulings.

3

Plaintiff was acting under the influence of alcohol and was seen by a nurse. SMF at ¶ 6. Plaintiff was very combative, attacked another inmate and assaulted a correctional officer, Defendant Demand. *Id*.

Plaintiff's allegations that she was assaulted by Defendant Demand were investigated twice. SMF at ¶ 17. The first investigation was conducted by the Allegheny County Bureau of Corrections Internal Affairs ("IA"). SMF at ¶ 18. The IA reviewed the incident and also looked into the feasibility of filing charges of assault against Plaintiff. SMF at ¶ 19.[6] The IA did not find any use of excessive force against Plaintiff but did find that Defendant Demand had violated Administrative Directive #1 by failing to report and document the incident with Plaintiff. *Id*. Upon the conclusion of the investigation, Defendant Demand, as dictated by the County's Progressive Discipline Policy,

---

[6]

The IA investigating officers, Captain Ronald Pofi (hereinafter "Pofi") and Lieutenant Thomas R. Leicht, Jr. (hereinafter "Leicht") (collectively "the IA officers") submitted a report detailing their investigation. As part of the investigation, the IA officers viewed videotapes of the intake sally port and the intake floor. (Docket No. 36-7, Defendants' Exhibit 6, the Bureau of Corrections Internal Affairs Investigative Report Regarding Officer Demand, at 2). The videotape documents Plaintiff's arrival to the Jail and part of her stay there. Plaintiff arrived approximately at 5:12 a.m. and she appeared to be cooperative. *Id*. At 5:19 a.m., she was placed in a holding cell. *Id*. At 5:24 a.m., she was removed from the first holding cell and placed in another one. *Id*. At 5:25 a.m., Plaintiff appeared to take a swing at Defendant Demand and then falls to the ground. *Id*. Plaintiff was picked up and escorted to another holding cell without any further incident although she was having trouble walking. *Id*. Defendant Demand later confirmed in her Incident Report (Docket No. 36-9, Defendants' Exhibit 8) that Plaintiff had assaulted her by digging her fingernails into Demand's arm. *Id*. at 2.

Additionally, Detective Michael O'Keefe (hereinafter "O'Keefe") submitted a Supplemental Report (Docket No. 36-6, Defendants' Exhibit 7) stating that he was called to investigate Plaintiff's simple assault allegation against Defendant Demand. (Docket No. 36, at 1). O'Keefe also viewed the videotape and reported Plaintiff appearing to strike or assault Defendant Demand at 5:25 a.m. and Plaintiff falling to the ground at about the same although there is uncertainty as to how she fell to the floor. *Id*. O'Keefe also reported that, ". . . at no time was [Plaintiff] alone with [Defendant Demand], [Plaintiff] was checked on a regular basis by corrections officers and medical staff. *Id*.

was informed of her misconduct and advised that anytime force is used, she must document the incident. SMF at ¶¶ 20 and 21.

The second investigation was conducted by the County of Allegheny Bureau of Police ("County Police"). The County Police concluded that charges would not be filed against Defendant Demand or Plaintiff due to Defendant Demand's tardiness in filing the incident report and due to the inconsistencies in Plaintiff's account of the incident. SMF at ¶ 22.[7] After being informed of the

---

[7]    As established above, Plaintiff attacked both a fellow detainee and Defendant Demand and was then moved to another cell. SMF, at ¶ 6. Plaintiff filed complaints with the Police alleging that she had been assaulted by Defendant Demand. SMF, at ¶ 7. Her complaints resulted in two subsequent investigations by the IA and the County Police. *See supra*, n.7. Both investigations revealed that Plaintiff had in fact attacked Defendant Demand when she was being moved to another cell. *Id.* Plaintiff brought a claim against Defendants before this Court alleging that Defendant Demand had "shoved [her] so forcefully into another cell that Plaintiff collided with a cement wall and fell to the floor. Defendant Demand then violently kicked Plaintiff about her body while she was on the floor and all the while Plaintiff was in handcuffs." (Docket No. 1, at ¶ 25).

At the time of the occurrence, Plaintiff told the physician that she saw on May 13, 2004, that she was driving home when pulled over by the police and was found to be inebriated. (Docket No. 40-3, Plaintiff's Exhibit 2, Plaintiff's Medical Report II dated May 25, 2004, at 1). She also told the physician that she was placed in a ". . . holding area, was assaulted, and 'thrown into a wall several times' by *another detainee* [and not Defendant Demand]." *Id* (emphasis added).

Indeed, the Court notes discrepancies in Plaintiff's account. In her deposition, Plaintiff relays the exact opposite of the statements she made to the physician she saw on May 13, 2004. The most singular discrepancy occurs when Plaintiff stated that she was assaulted by Defendant Demand. (Docket No. 40-2, Plaintiff's Exhibit 1, at 9-12). She also testified that she immediately went to the hospital after her May 9, 2004 arraignment even though her medical report states that "[S]he was seen in the emergency department on May 13, 2004 and [was] diagnosed with a fracture of her right distal clavicle." (Docket No. 40-2, at 25; *see also* Docket No. 40-3, Plaintiff's Exhibit 2, Plaintiff's Medical Report I dated May 13, 2004, at 10).

The Court also notes that Plaintiff's statements in her deposition present such inconsistencies as to create doubt about the veracity of the details that she provides of her encounter with Defendant Demand. *See United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1947) (where it was generally held that oral testimony which is in conflict with contemporaneous documentation should be afforded little evidentiary weight). *See also Cucuras v. Secretary of Dept. of Health and Human Services*, 993 F.2d 1525, 1528 (1993) ("Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the

protocol of documenting any incident that involves the use of force, Defendant Demand prepared

an incident report where she indicated that Plaintiff refused to obey orders and had assaulted her.

SMF at ¶ 23.[8] Defendant Demand also reported that Plaintiff was interviewed by a nurse and she

never asked to see another nurse nor did she complain about being hurt or about suffering from any

injuries.[9] *Id.*

## III.    <u>Procedural History[10]</u>

---

balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.")  The investigations, the medical reports, and Plaintiff's discrepancies serve as further indication of Plaintiff's failure to meet her burden of countering Defendants' SMF contrary to LR 56 and this Court's policies and procedures.

[8]

Defendant Demand's Incident Report confirms what was included in the IA Officers' report and in O'Keefe's report, specifically that Plaintiff was moved to another holding cell, that Plaintiff had dug her nails into Demand's arms, that Plaintiff then fell to the ground and never complained about being hurt, suffering any injuries, or needing to see a nurse.  (Docket No. 36-9, Defendants' Exhibit 8, at 1-2).  Demand's Incident Report also states that Plaintiff resisted being moved to another holding cell and the reason for the move was because Plaintiff had attacked one of the present detainees.  *Id*. at 1.

The investigations, the two resulting reports, and their documentation of the videotape further illustrate several points, namely that Defendant Demand utilized force as a way to subdue Plaintiff after attacking Demand and a fellow detainee, that Plaintiff was never alone with Defendant Demand, and that Defendant Demand was not the cause of Plaintiff's injuries.  Plaintiff has made no attempts whatsoever to challenge the investigations and upon review, the facts as stated in the investigation reports remain in order.

[9]

*See also* Defendants' Answers to Plaintiff's Interrogatories (Docket No. 40-4, Plaintiff's Exhibit 3, at 2) where Defendants state that Defendant ACHS did not provide any medical care to Plaintiff during her stay in the Jail.  The only time Plaintiff was seen by ACHS representatives was during the preliminary review when she first arrived at the Jail.  *Id*  Once again, note should be taken of O'Keefe's Supplemental Report which states that Plaintiff was continuously checked by the present medical staff and correctional officers.  (Docket No. 36-6).

[10]

This case was originally assigned to Judge Thomas Hardiman.  On April 6, 2007, this case was reassigned to the undersigned Judge.

Plaintiff brought a 42 U.S.C. §§ 1983 and 1985 action against Defendants on May 8, 2006, asserting various claims. SMF at ¶ 1. Specifically, Plaintiff avers as follows:

1. That Defendants Demand, John Doe, and Jane Doe violated her constitutional rights by refusing to provide her with medical care while in police custody, using excessive and unreasonable force, subjecting her to deprivations with a malicious and reckless disregard of her rights, and engaging in summary punishment.[11]

2. That Defendants,[12] under color of state law, "permitted, encouraged, tolerated, and ratified a pattern and practice of unjustified, unreasonable and illegal medical care and use of excessive force by police officers . . . [and] maintained a system of inadequate training pertaining to the law of the use of force and provision for medical care. . . ."

Complaint at ¶ 41.

By Order of Court on September 9, 2006, the Court dismissed Count II of Plaintiff's Complaint as it pertained to Defendants Dixon and Phillips in their individual capacity. (Docket No. 9). To the extent that Count II alleged inadequate medical care against Defendants ACHS, Phillips and Dixon, the Court also dismissed that portion of Count II for failure to state a claim upon which relief could be granted. *Id.* Lastly, the Order dismissed Plaintiff's § 1985 claim as to Defendant ACHS, Dixon, and Phillips. *Id.*

The Court issued a second Order (Docket No. 10) on September 9, 2006, striking the allegations in paragraphs 35(a) ("refusal to provide medical care to a person in custody of police"), 35(c) ("freedom from summary punishment"), and 37 ("As a direct and proximate result of the acts

---

[11]

The allegations of refusal to provide medical care and engagement in summary punishment have been stricken as ordered by the Court on September 6, 2006 (Docket No. 10).

[12]

The claimed against Defendants are: Rustin, Onorato, Allegheny County Pennsylvania Police, Peter DeFazio, Dana Phillips, Bruce Dixon, Allegheny County Health Department and Allegheny Correctional Health Services, Inc. It should be noted that Defendants Onorato and ACPP have been terminated from the case, *supra*, at n. 2.

of Defendant Officers, Plaintiff has suffered severe and permanent injuries and was forced to endure great pain and mental suffering and to incur medical and legal expenses, and was deprived of her physical liberty") of Count I and dismissing the claims in Count II against Defendants ACP, Onorato, DeFazio and Rustin.

Defendants filed a Suggestion of Death Notice as mandated by Rule 25(a)(1) of Federal Rules of Civil Procedure notifying the Court of the death of Defendant Demand on September 12, 2006. (Docket No. 11). The Allegheny County Defendants filed their Answer to the Complaint, New Matter, and Affirmative Defenses (Docket No. 12) on September 19, 2006. On October 5, 2006, the Court issued a Notice (Docket No. 13) advising Plaintiff of the fact that a return of service had not been filed on Defendant ACHD and failure to do so by October 13, 2006 would lead to the dismissal of the action against Defendant ACHD. By Order of Court on October 17, 2006, the Court *sua sponte* dismissed Defendant ACHD pursuant to Fed. R. Civ. P. 4(m) which provides that the Court "may sua sponte dismiss without prejudice a civil action against any defendant upon whom the plaintiff has failed to effect service of a summons and complaint within 120 days after the filing of the complaint." (Docket No. 15, at 1).

Plaintiff filed a Motion to Compel Discovery (Docket No. 21) on February 26, 2007, arguing that Defendants' responses to her request for production of documents were incomplete, illegible, and non-responsive. Plaintiff also argued that Defendants did not respond to her interrogatories and those that were answered were incomplete. Defendants did not file a response to Plaintiff's Motion to Compel Discovery. On May 8, 2007, the Allegheny Health Defendants filed their Answer to the Complaint. (Docket No. 25). The Court held a status conference on May 17, 2007 to address Plaintiff's Motion to Compel Discovery. The Court issued an Order (Docket No. 31) dated May 17,

2007, granting Plaintiff's Motion to Compel Discovery ordering Allegheny County to fully and completely respond to Plaintiff's motion and staying the time period for filing for summary judgment until after the discovery period. The Court issued an Order (Docket No. 34) dated July 16, 2007, again ordering Defendant ACP to respond to Plaintiff's Motion to Compel Discovery.

On September 24, 2007, the Allegheny County Defendants filed a Motion for Summary Judgment (Docket No. 36) along with a Brief in Support (Docket No. 37) and numerous exhibits (Docket No. 36-2 to 36-11, Exhibits 1-10). Plaintiff filed a Motion to Amend Caption (Docket No. 38) substituting the Estate of Wendy Demand for the Defendant Wendy Demand. The Court granted said motion (Docket No. 39), allowing for the substitution "within 30 days of grant of letters of administration regarding the Estate of Wendy Demand." Plaintiff then filed her Brief in Opposition to Summary Judgment (Docket No. 40) on October 9, 2007 along with supporting documents (Docket 40-2 to 40-6, Exhibits 1-5). On November 2, 2007, the Allegheny Health Defendants filed their Motion for Summary Judgment (Docket No. 44) along with the Supporting Brief (Docket No. 45) and exhibits (Docket No. 45-2, Exhibit 1), which was subsequently re-filed as an Errata event (Docket No. 46) due to mis-filing. On November 30, 2007, Plaintiff filed her Brief in Opposition (Docket No. 47) to Docket No. 46. On February 7, 2008, Plaintiff filed a Motion for Extension of Time in Which to Create an Estate for Defendant Demand (Docket No. 48) which the Court denied in its Order dated February 14, 2008, given opposition by the County Defendants (Docket No. 49) and Plaintiff's delay. Thereafter, Plaintiff filed a Request of Plaintiff for Permission to Appeal (Docket No. 53) regarding the estate of Demand, which Defendants opposed and the Court denied

on April 25, 2008.  (Docket No. 55).[13]

IV.    **Standard of Review**

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In evaluating the evidence, the court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor.  *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir.2005). While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial.  *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions,

---

[13]

*Supra*, n. 2.

10

admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## V.    Discussion

### A.    Overview of Defendants' Arguments

The Allegheny County Defendants claim entitlement to summary judgment on the following grounds: (1) Plaintiff fails to state a substantive claim under 42 U.S.C. §§ 1983 or 1985; (2) Plaintiff fails to state a claim against Defendant ACDC because it is a subunit of Allegheny County; (3) Defendants John Doe and Jane Doe should be terminated from the suit as they have not been identified; and (4) Plaintiff fails to demonstrate a policy or custom that violates her Constitutional rights.

The Allegheny Health Defendants claim entitlement to summary judgment on the following grounds: (1) Plaintiff fails to allege the violation of any specific amendment or article of the U.S. Constitution; (2) Plaintiff fails to demonstrate that Defendants ACHS, Dixon, or Phillips had a duty or role in the training of correctional officers or other jail personnel; (3) Defendants Dixon and Phillips should be terminated in their official capacities as Plaintiff has sued the entity by which Defendants Dixon and Phillips are employed; and (4) Plaintiff fails to identify any policy or custom that violates her civil rights.

### B.    Allegheny County Department of Corrections is not an Entity Subject to Suit in a Section 1983 Claim.

Plaintiff named the Allegheny County Department of Corrections as a defendant. Defendants argue that Defendant ACDC is a subunit of Allegheny County and it should be terminated as a party

in this suit. The Court agrees. Municipalities have been recognized as a 'person' within the meaning of 42 U.S.C. 1983 and are therefore, subject to suit. *See Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). Defendant ACDC, as a subunit of Allegheny County, has no corporate identity and therefore lacks the capacity to be sued. *Johnson v. City of Erie*, 834 F.Supp. 873 (W.D.Pa. 1993). Accordingly, the claims against Defendant ACDC are dismissed.

### C. Defendants Rustin, DeFazio, Dixon, and Phillips are not Proper Parties in the Suit.

The Allegheny County Defendants and the Allegheny Health Defendants argue in their respective briefs that Defendants Rustin, DeFazio, Dixon and Phillips must be dismissed from the suit in their official capacities. The Court is in agreement with Defendants. Claims against these four defendants must be dismissed for the very same reasons that warrant dismissal against Defendant ACDC. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Plaintiff names the Defendants' employer, i.e. Allegheny County, as a party to the suit. Moreover, these four Defendants have already been dismissed previously in their individual capacities.[14] Consequently, claims against these four defendants are barred and they will be terminated from the case.

### D. Defendants John Doe and Jane Doe Should be Terminated from the Suit.

The Allegheny County Defendants argue that Defendants John Doe and Jane Doe should be

---

[14]

Defendants DeFazio and Rustin were dismissed in their individual capacities in the Court's Order dated September 6, 2006. (Docket No. 10). Defendants Dixon and Phillips were dismissed in their individual capacities in the Court's Order also dated September 6, 2006. (Docket No. 9).

terminated from the case as they have never been identified despite Plaintiff filing her Complaint on May 8, 2006. They also contend that Plaintiff has not exercised diligence during the discovery period to elucidate the identities of these anonymous defendants. Plaintiff has not addressed this issue in her Response Brief.

In Count I of her Complaint, Plaintiff alleges that Defendants John Doe and Jane Doe (whom Plaintiff identified as possibly being a uniformed police officer or jail guard and a jail guard or nurse, respectively) failed to intervene or heed her cries for help as Defendant Demand was exercising excessive force and 'beating her up'; "[She further alleges that] [t]he jail personnel [John Doe and Jane Doe], who were right outside her cell, were laughing and joking about the beating Plaintiff took [and proceeded to] argue about who should attend to Plaintiff's complaints but in the end did absolutely nothing." (Docket No. 40, at 3).

"[I]n the adversarial system of litigation the plaintiff is responsible for determining who is liable for her injury." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 212 (3d Cir. 2006). Fictitious names can be used for parties in the suit "at least until reasonable discovery permits the actual defendants to assume their places." *Atlantic Used Auto Parts v. City of Philadelphia*, 957 F.Supp. 622, 625 (E.D. Pa 1997) (*quoting Klinger v. Yamaha Motor Corporation, U.S.A.*, 738 F.Supp. 898, 910 (E.D. Pa.1990) and *citing Johnson v. City of Erie, Pa.*, 834 F.Supp. 873, 878 (W.D. Pa. 1993)).

The identification of the anonymous defendants has not taken place in the instant matter. On November 11, 2006, the parties submitted a discovery plan (Docket No. 17) outlining the deadlines for various actions. Accordingly, the Court issued a Case Management Order (Docket No. 19) mandating that all discovery be completed by April 30, 2007 and any motions to amend the pleadings or to add new parties be completed no later than April 2, 2007. This Court extended the

discovery period after the case was transferred to Judge Nora Barry Fischer. (Docket No. 34). Defendant Allegheny County was ordered to respond fully to Plaintiff's Motion to Compel Production of Documents and the deadlines for summary judgment motions and evidentiary materials were extended to September 17, 2007 and October 9, 2007, respectively. At no point during the original and extended discovery periods did Plaintiff seek leave of the Court to amend her Complaint to identify John Doe and Jane Doe. (The only request that Plaintiff made was to file a Motion to Amend Caption (Docket No. 38) on October 3, 2007 changing the caption of the case to "Estate of Wendy Demand" due to the death of Defendant Demand; this motion was filed over one year after the filing of the Suggestion of Death (Docket No. 11) on September 12, 2006). Furthermore, none of the items that Plaintiff requested for document production related specifically to the identification of Defendants John Doe and Jane Doe. Plaintiff did ask for personnel records but that was for Defendant Demand, only. Accordingly, the Court dismisses Count I of Plaintiff's Complaint against Defendants John Doe and Jane Doe, with prejudice.

### E. Plaintiff has failed to state a substantive claim under 42 U.S.C. § 1983.

The Court will now proceed to examine Plaintiff's substantive claims, under 42 U.S.C. §§ 1983 and 1985, respectively. Section 1983 provides that "every person who, under color of [state law] subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity." 42 U.S.C. § 1983. In other words, § 1983 does not create substantive rights but provides a vehicle by which violation of rights created by the Constitution or federal law may be vindicated. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979); *Morse v. Lower Merion School Dist*., 132 F.3d 902, 907 (3d Cir. 1997).

14

A plaintiff asserting civil rights violations under § 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all.' " *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998) and *citing Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).

The parties do not dispute that Defendants were acting under color of state law. Rather, the dispute is as to whether Plaintiff has successfully alleged constitutional violations. Both the Allegheny County Defendants and the Allegheny Health Defendants argue in their respective motions for summary judgment that Plaintiff has failed to state a substantive claim under 42 U.S.C. § 1983 as she had not pled violations of specific Constitutional Amendments or Articles; instead she is "merely alleg[ing] 'violations' of [§ 1983]." (Docket No. 37, at 3-4 and Docket No. 46, at 5-7). The Allegheny County Defendants extend their argument to Plaintiff's § 1985 claim asserting that Plaintiff's failure to state a claim under § 1983 necessitates the same result in a § 1985 action.[15] Plaintiff alleges violations of her constitutional rights through Defendants' engagement in the use of excessive force and in their deliberate indifference to Plaintiff's claimed medical needs while she was in custody.

The Court notes that Plaintiff contends in her response brief, albeit in an oblique manner, that

---

[15] The § 1985 action has been dismissed as to the Allegheny Health Defendants. (Docket No. 9).

she is asserting violations of her Fourth, Eighth, and Fourteenth Amendment rights. (Docket No. 40, at 5-6).[16] The Fourth Amendment governs excessive force claims only within the context of those claims stemming from an arrest or investigatory stop. *Fuentes v. Wagner*, 206 F.3d 335, 346-47 (3d Cir.2000) (*citing* Graham *v. Connor*, 490 U.S. 386 (1989)). Since Plaintiff's excessive force claim does not arise out of the events occurring during her arrest, but rather during pretrial detention, the Fourth Amendment does not apply. *Id.* Instead, as articulated by the Supreme Court in *Graham*, it is the Due Process Clause as applied to states through the Fourteenth Amendment, that offers protection to pretrial detainees putting forth claims of excessive force. 490 U.S. at 395, n. 10 (*citing Bell v. Wolfish*, 441 U.S. 520, 535-539 (1979)). In order to establish a Due Process violation, ". . . the detainee must show that the force used amounts to a wanton infliction of punishment, as opposed to an amount rationally related to exercising control." *Id.* (*citing Fuentes*, 206 F.3d 335). If a plaintiff is unable to show that the use of force was wanton, the Court will then consider whether the use of force was "really an incident of a legitimate nonpunitive objective." *Fuentes*, 206 F.3d at 342.

Plaintiff makes no attempt to show that Defendant Demand's use of force against her was used as a means of punishing her. As such, the Court must then look to the facts describing the use of force to determine whether it is really an incident of a legitimate nonpunitive objective. As

---

[16]

In fact, Plaintiff's response to Defendants' argument that she has failed to state a substantive claim under §§ 1983 and 1985 consists of the following two sentences:

"Use of excessive force by a law enforcement officer is considered a 'seizure' under the Fourth Amendment which prohibits such unlawful action.

As to the deliberate indifference to Plaintiff's medical needs while in custody, Plaintiff clearly relies on her Eight and Fourteenth Amendment rights." (Docket No. 40, at 5-6) (citations omitted).

established above, Plaintiff was arrested for driving the wrong way on a highway and being heavily inebriated, after taking the Intoxilyzer exam with a BAC of 0.213%, twice the legal limit.  (SMF at ¶ 5; Docket No. 36-10, Exhibit 9, the Police's Investigative Report, at 3, the Police Officers' Report, at 5, and the Police's Impairment Influence Report Form, at 7).  Plaintiff was still acting under the influence of alcohol when she was first examined by a nurse upon her arrival at the Jail.  SMF at ¶ 6.  Plaintiff became combative and attacked another detainee.  (*Id.*; *See also* Docket No. 36-9, at 1). While being moved to another cell, Plaintiff resisted and dug her nails into Defendant Demand's arm.  (Docket No. 36-9, at 2).  A videotape of Plaintiff's stay at the Jail shows Plaintiff's removal to another cell and her appearing to take a swing at Defendant Demand.  (Docket No. 36-5, at 2; Docket No. 36-6).  Defendant Demand grabbed Plaintiff's arm and Plaintiff, for unknown reasons, subsequently, fell to the ground.[17]  (Docket No. 36-9, at 1; *See also* Docket No. 36-6).

It is clear from the record that the use of force was utilized, according to the Jail's policy, as a means with which to stop Plaintiff from attacking an inmate and an officer, Defendant Demand. As stated in the Jail's Administrative Directive #1, the ". . . use of force is authorized to prevent escapes, to prevent death or injury to staff, inmates and others . . . [and] not as a means of punishment or revenge. . . ."  (Docket No. 36-5, Defendants' Exhibit 4, at 1; Docket No. 3-46, Defendants' Exhibit 3 (Assistant Deputy Warden Emerick's Affidavit which gives an overview of

---

[17]
     The record does not contain any facts stating that the reason Plaintiff fell to the ground was because Defendant Demand had grabbed Plaintiff.  (*See* Docket No. 36-9, at 1) (Defendant Demand's Incident Report where she stated that after grabbing Plaintiff's arm, she "dropped on to the floor and began to scream a cry about her disc in her back"); (*See also* Docket No. 36-5) (the IA officers' Report which states that Plaintiff appeared to be taking a swing at Defendant Demand and subsequently fell to the ground).  (*See also* Docket No. 36-6) (O'Keefe's Supplemental Report stating that there is uncertainty as to the reason why Plaintiff fell to the ground after attempting to hit Defendant Demand).

the 'use of force' policy at the Jail)). The Administrative Directive #1 provides a description of the appropriate levels of force to be used for certain occurrences and goes on to provide protocols for the aftermath of using force:

PHYSICAL HANDLING/LEVELS OF FORCE
A. The first level of force available to an employee is the use of his or her hands. Physical handling is justified to control unruly inmates, to separate participants in a fight, in self defense and in defending other correctional employees, inmates or other persons.

. . .

E. Force may also be used to move inmates who fail to comply with lawful orders and are defiant and disruptive to the good order of the institution.

. . .

REPORTING
A. Any staff member who uses physical force is required to report such use of force to the Shift Commander as soon as possible.
B. The Shift Commander is required to report the incident to the Warden's Office, or other appropriate staff as directed as soon as possible.

. . .

DOCUMENTATION
A. Written reports, utilizing the Allegheny County Jail Incident Report, are required from the person who applied the force and from all who witnessed or were involved in the incident. The reports shall be submitted to the Shift Commander no later than the end of the employee's tour of duty.

(Docket No. 36, Exhibit 4, at 2-4).

Defendant Demand followed the protocol, as dictated by the Administrative Directive #1, and utilized force to subdue Plaintiff who had attacked Defendant Demand and another inmate. Where Defendant Demand had failed in following the Jail policy was to inform her Shift Commander of the use of force and to prepare a written report documenting the use of force. (Docket No. 36-4, Defendants' Exhibit 3, at 3). However, in accordance with the Jail's Progressive Discipline Policy (Docket No. 36-6, Defendants' Exhibit 5), she was reprimanded for such oversight

18

and was made to prepare an incident report (Docket No. 36-9, Defendants' Exhibit 8).[18]  Thus, the Court finds that Plaintiff has failed to establish a Fourteenth Amendment excessive force claim, based on the facts before it.

The Eighth Amendment prohibits cruel and unusual punishment.  A claim arising under the Eighth Amendment for deliberate indifference to a plaintiff's medical needs extends only to convicted prisoners.  Once again, Plaintiff's status as a pretrial detainee bears significance.  "While the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.' " *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  Thus, the Court will evaluate Plaintiff's claim for inadequate medical care under the Fourteenth Amendment framework which utilizes the same standard as Eighth Amendment claims, namely the showing of, ". . . (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. . . ." *Id.* at 582 (*citing Rouse v. Planter*, 182 F.3d 192, 197 (3d Cir. 1999)). *See also Travillion v. Leon*, 248 Fed.Appx. 353, 356 (3d Cir. 2007) (since defendant was a pretrial detainee during the occurrence of the events he is now complaining of, the Due Process Clause will apply, and not the Eighth Amendment).

In the instant matter, Defendants do not dispute that the injuries suffered by Plaintiff are serious.  Instead, they argue that Plaintiff has failed in establishing the second prong of the test,

---

[18]

The Jail implemented Level 1 of the Discipline regime and gave Defendant Demand an oral reprimand which serves as a means of having the employee correct the situation or lapse in protocol. (Docket No. 36-6, Exhibit 5, at 5).  Additionally, the reprimand was recorded in Defendant Demand's file.  (Docket No. 36-4, Defendants' Exhibit 3, at 3).

namely, showing that Defendants were aware of Plaintiff's injuries and consequently were deliberately indifferent. Both sets of defendants allude to the fact that the Jail does not have its own internal medical services unit; rather it contracts with an outside vendor, Defendant ACHS, which supplies "medical professionals in order to provide adequate medical care to inmates, which includes . . . inmates in the intake area of the Jail." (Docket No. 37, at 12; Docket No. 36-4, at ¶ 5). It would, however, appear that the Allegheny County Defendants are arguing that they did not exercise deliberate indifference to Plaintiff because their medical service is contracted to Defendant ACHS and thus, any claim of deliberate indifference should be directed towards Defendant ACHS. (Docket No. 41, Defendants' Response to Plaintiff's Brief in Opposition to Summary Judgment, at 3).

The Court disagrees with the Allegheny County Defendants' reasoning. The Supreme Court has ruled that "[c]ontracting out prison medical care does not relieve [Defendants] of [their] constitutional duty to provide adequate medical treatment to those in [their] custody, and it does not deprive the . . . prisoners of the means to vindicate" their Fourteenth Amendment rights. *West v. Atkins*, 487 U.S. 42, 56 (1988).[19] As such, the Allegheny County Defendants cannot escape liability simply because they have contracted with ACHS to provide medical attention for prisoners in their custody.

"The 'deliberate indifference' standard for purposes of liability under section 1983 is a

---

[19]

In the *West* decision, the Court explored the relationship between the state (in this particular case, a prison) and those with whom it contracts out services (in this particular case, a private physician who was hired by the prison to attend to the inmates' medical needs). In pertinent part, the *West* Court noted that inmates can only turn to those that the state authorizes to provide medical services and as such, the treating physician, although operating through a contract with the state, was nevertheless, considered to be "clothed with the authority of state law." Likewise, in the instant matter, Defendant ACHS operates under the authority of the Jail; that the Allegheny County Defendants would therefore attempt to turn away from that authority is improper.

stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. . . . The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference." *Lopez v. Falor*, 2006 WL 4781932, at *3 (W.D.Pa 2006) (*citing Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997) and *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In the instant matter, Plaintiff alleges that she pleaded throughout the night and the next morning asking Defendant Demand and other (unidentified) jail personnel to help her but they left her unattended. However, Plaintiff is not successful in establishing Defendants' deliberate indifference. In regards to Defendant Demand, Plaintiff is able to show that Demand was "aware of the fact from which the inference could be drawn," namely, that force was used to subdue Plaintiff (as Defendant Demand was the correctional officer who restrained Plaintiff) after Plaintiff had attacked another detainee. *Lopez*, *supra*. Even so, Plaintiff is unable to show that Defendant Demand drew the inference that Plaintiff had suffered injuries. It is undisputed that Plaintiff saw a nurse in the intake area when she first arrived at the Jail and that she did not complain about being hurt nor did she ask to see another nurse during the remainder of her stay in the Jail. (SMF at ¶ 23; Docket No. 36-6; Docket No. 36-9, Defendants' Exhibit 8, at 1-2). Furthermore, Plaintiff, at regular intervals, was checked by the present medical staff and correctional officers. (Docket No. 36-6). Thus, Plaintiff is unable to establish that the Defendants were deliberately indifferent to her medical needs.

      **F.**      **Plaintiff has failed to state a substantive claim under 42 U.S.C. § 1985**.

Section 1985 provides that "[i]f two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of

damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

In her Complaint, Plaintiff also alleges a § 1985 conspiracy claim. The Allegheny County Defendants argue that Plaintiff cannot proceed with her § 1985 claim since she has failed to state a claim under § 1983. They also aver that Plaintiff has failed to establish a connection between Defendants' alleged acts and a racial or any other class-based discriminatory animus. Plaintiff does not address this issue in her Response Brief.

Failure to state a claim under § 1983 necessitates dismissal of the derivative § 1985 conspiracy claim. *Thomas v. Conway*, 2005 WL 2030304, at *6 (M.D.Pa 2005) (as "Plaintiff has failed to assert a claim pursuant to 42 U.S.C. § 1983 upon which relief can be granted, he has, by definition, failed to assert a claim pursuant to 42 U.S.C. § 1985 upon which relief can be granted.") (*citing McHenry v. Pa. State System of Higher Education*, 50 F. Supp. 2d 401, 418-19 (E.D.Pa.1999)).

To succeed on a claim under § 1985, a plaintiff must establish the following elements: (1) a conspiracy; (2) for the purpose of depriving any person or class of person of equal protection of the laws or equal privileges and immunities; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Piskanin v. Hammer*, 2007 WL 1377649, *2 (E.D.Pa. 2007). To satisfy the second element, Plaintiff must show that the Defendants were motivated by some "class-based, invidiously discriminatory animus" (i.e. racial animus). *Id.*

Since Plaintiff has failed to state a claim under § 1983, her § 1985 conspiracy claim cannot survive. Furthermore, Plaintiff has not established the threshold requirement of § 1985 -- she has

22

not asserted the existence of a class-based invidiously discriminatory animus. Indeed, her complaint does not set forth specific allegations to support her conspiracy claim but rather refers to § 1985 in name, only. (*See* Plaintiff's Complaint, Document No. 1). Moreover, Plaintiff has failed to show facts demonstrating a conspiracy.[20]

Consequently, the Court finds that Plaintiff has failed to state substantive claims based on §§ 1983 and 1985; the Court need not and does not address the remainder of Plaintiff's and Defendants' arguments.

## VI. <u>Conclusion</u>

Based on the foregoing, the Court GRANTS the Allegheny County Defendants' Motion for Summary Judgment [36] as well as the Allegheny Health Defendants' Motion for Summary Judgment [44]. An appropriate Order to follow.

<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge

Date: April 25, 2008

cc: All counsel of record

---

[20]

As established above, Plaintiff failed to comply with the Local Rules of this Court by setting forth opposing facts and responding to Defendants' SMF. Accordingly, the facts as delineated in Defendants' SMF, were deemed to be admitted by Plaintiff.